**HADLEY v. CONTINENTAL CASUALTY CO.**

No. 9054.

Circuit Court of Appeals, Eighth Circuit.

July 13, 1931.

George D. McClintock, of Minneapolis, Minn. (George Hoke and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellant.

Fred N. Furber, of Minneapolis, Minn. (Fowler, Carlson, Furber & Johnson, of Minneapolis, Minn., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

STONE, Circuit Judge.

This is an appeal from a judgment entered upon a verdict directed in favor of defendant in a suit for double indemnity under an accident policy.

The policy was issued upon Clarence G. Hadley, husband of the plaintiff. It covered death by accident to the amount of $3,000, with a double indemnity clause providing that the amount of the policy should be doubled if the accident was in consequence of certain specified causes, among which was that the injuries should be "caused by the explosion of a steam boiler." There is no dispute as to the character of the accident or as to the death of Hadley being caused thereby, and the company confesses liability as to the amount of the single indemnity ($3,000). The sole contention is whether the double indemnity is recoverable because the death was occasioned by the explosion of a steam boiler, and the determination of that issue rests upon whether a "feed water heater," which was the part of the heating plant which exploded, is to be construed as a steam boiler, within the meaning of the policy.

The deceased was employed in connection with a very large plant furnishing heat and power to the Mayo industries at Rochester, Minn. This plant generates steam which is passed out into pipes running throughout the hospital, and other buildings. The method of generating this steam is as

follows: Water is introduced into what is known as a "surge tank" from which it flows, by gravity, into a tank or receptacle known as the "feed water heater." From thence it passes, by gravity, through twenty-seven feet of piping to a boiler feed pump, which forces it up through about the same length of pipe to the steam boiler proper where the heat is first applied to it for the immediate purpose of creating steam. The place of the "feed water heater" in the scheme is to warm the water before it enters the boiler proper to which the heat of the furnace is applied. This device is useful, if not necessary, because experience has demonstrated that the introduction of cold water into a hot boiler results in expansion and contraction detrimental to the boiler and sometimes weakens its strength. The preheating of this water in the "feed water heater" is caused by introduction of steam to the cool water, which is caused to fall through punctured plates. It is not intended that this water shall be turned into steam in the "feed water heater," but the normal effect is that the steam, which is introduced to heat the water, is condensed. The "feed water heater," therefore, is not constructed to resist the force of active steam expansion, its sole function, as said above, being to provide a place where the cool water can be warmed so that it may later be introduced into the boiler without injury to the latter. ■ The statement in the policy as to double indemnity is as follows:

"The amounts specified in Parts I and II shall be doubled if the insured is injured under the following circumstances, to wit:

"While a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps or running board of railway or street railway cars, or while boarding or alighting therefrom) or while in a passenger elevator (elevators in mines excepted); (2) or, caused by a stroke of lightning; (3) or, caused by the burning of a building while the Insured is therein; (4) or, caused by the collapse of a building while the Insured is therein; (5) or, caused by the explosion of a steam boiler; (6) or, caused by a cyclone or tornado. * * * "

The above quotation reveals that the double indemnity is confined to certain rather narrow and definitely stated causes. This policy was written to be understood by laymen. It seems to be clear in meaning. It states that double indemnity shall be allowed, if, among other causes, death results from "the explosion of a steam boiler." A steam boiler means a boiler in which steam is generated, and this meaning is further fortified by the fact that the indemnity is against the explosion of such a boiler. The entire expression seems to have in mind, not only a boiler, but a boiler in which steam is generated and which, therefore, may explode. It is not an indemnity from a steam explosion, no matter when or how caused.

■ It is argued that the "feed water heater" is a necessary and important part and connection in the generation of the steam at this plant, and therefore is a part of the "steam boiler" here, within the meaning of the policy. It may be conceded that the heater is a necessary and important part and connection in the generation of steam at this plant, but so is the surge tank; so is the gravity pipe between the surge tank and the "feed water heater"; so is the boiler feed pump and its connected pipes, and so, also, are the furnaces and the smokestack. No steam could be generated in this plant without the immediate use of all of these connected parts. They, with the boiler, make up the heating plant proper, but this insurance is not for the explosion of any part of a steam plant but of a particular, designated and named element of that plant, to wit, a "steam boiler," and the steam boiler of this plant did not explode. There is no room for any liberality of construction which might broaden the meaning of the term used in the policy, because there is no ambiguity in the term used in the policy and no difficulty in applying that term to the undisputed facts shown here.

The judgment should be and is affirmed.